UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>SHARIFF ROMAN )<br>    Defendant ) | C.R. No. 95-075-JJM-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Shariff Roman has petitioned this Court under 28 U.S.C. § 2255 to vacate, set aside, or correct his judgment of conviction and sentence for using and carrying a firearm during and in relation to a crime of violence.  He claims that the Court should vacate his conviction based on the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015) ("*Johnson II*"), and *Davis v. United States*, __ U.S. __, 139 S. Ct. 2319 (2019).  The Court conducted a hearing on the Motion to Vacate (ECF No. 1232).  The Court finds that Mr. Roman has failed to demonstrate entitlement to relief and DENIES his petition.

FACTS[1]

A federal Grand Jury sitting in the District of Rhode Island indicted Mr. Roman and others for multiple crimes arising out of their involvement in the Providence, R.I., chapter of the Almighty Latin King Nation.  In particular, Mr. Roman was charged with racketeering, in violation of the Racketeer Influenced Corrupt Organization ("RICO") Act, 18 U.S.C. § 1962(c) (Count One), which included four predicate acts (Racketeering Acts Two–Five); conspiracy to commit racketeering, in violation of 18 U.S.C. § 1962(d) (Count Two); four counts of violent crimes in aid of racketeering ("VICAR") (Counts Four–Seven); transfer of firearms, knowing those firearms would be used to commit a crime of violence, in violation of 18 U.S.C. § 924(h) (Count Eleven); and using and carrying firearms during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Twelve).  Racketeering Act Two charged Mr. Roman with conspiracy to murder Jose Mendez, in violation of §§ 11-1-6 and 11-23-1 of the Rhode Island General Laws, and the murder of Jose Mendez, in violation of R.I. Gen. Laws §§ 11-23-1 and 11-1-3.  Count Four also charged Mr. Roman with VICAR murder of Jose Mendez, in violation of 18 U.S.C. § 1959(a) (1) and 18 U.S.C. § 2.  The crimes of violence referenced in Counts Eleven and Twelve related to the murder of Mr. Mendez, as charged in Racketeering Act Two.  At issue here is the § 924(c) charge in Count XII.

---

[1] The Facts section is taken largely from the First Circuit's opinion denying Mr. Roman's direct appeal, *see United States v. Lara, et al.*, 181 F.3d 183 (1st Cir. 1999), and this Court's docket.

The First Circuit described the events leading to the murder of Mr. Mendez, and the ultimate killing, as follows:

> On Saturday, November 5, 1994, several members of the Providence Latin Kings attended a party in Connecticut. On that occasion, they learned that their Connecticut counterparts were at war with a rival gang, the Netas. Two Connecticut Latin Kings returned to Rhode Island with the Providence contingent. One of them, Peter Natal, later became a confidential informant.

> At a meeting of the Providence chapter held on Monday, November 7, [George] Sepulveda told his cohorts about the war in Connecticut. Immediately after this announcement, the officers of the Providence chapter (including, at least, Sepulveda, [Terrence] Boyd, and Roman) went into executive session and discussed a plan to kill the leader of the Netas in Providence. This strategy was hatched on the theory that, in Sepulveda's words, "without the head, the body falls." The executive session ended on this note, the main meeting resumed, and Sepulveda asked the general membership to forget what he had said about a war.

> Natal attended the executive session. He testified that, during this discussion, the Latin Kings hierarchs noted the near-dearth of local Netas; Providence was virgin territory and there were only four full members of the Neta gang at that point. [Alex] Mesa confirmed this assessment. He testified that "there was [sic] very few Netas out here. There's probably like four Netas. Each one had a position [i.e., held an office in the gang.]" Initially, there was confusion over whether Jose Mendez might be the president of the Providence Netas, but a consensus gradually developed in favor of the view that Winston Navarette held that office.

> After the meeting adjourned, several participants repaired to the dwelling that Roman shared with his then-paramour, Tia Barboza. A small group, including Boyd and Roman, met in Tia's bedroom and finalized the plan to kill the head of the Netas. Four members were assigned responsibility for carrying out the assassination: [George] Perry, [Rodney] Santi, Hakim Davis, and Juan Garcia. Witnesses stated that Boyd and Roman each chose at least one member of the "hit squad." The next day, Roman distributed weapons from the gang's cache to the appointees.

In retrospect, it appears that, at the crucial time, the Providence Netas had four officers: Winston Navarette (president), Jose Mendez (vice-president), Edgar Pichardo (disciplinarian), and Maquiva Mendez (secretary). The Netas lived together. When the hit squad arrived at their abode, they asked for Navarette and were informed that he was out of town. The trial testimony was unequivocal that when the Neta president was away, the vice-president assumed his responsibilities. Thus, Jose Mendez, nominally the Neta vice-president, was the head of the Netas in Navarette's absence.

Upon learning of Navarette's unavailability, the crew invited Jose Mendez, who was wearing his Neta colors at the time, to smoke some marijuana. The group, now five in number, walked to a nearby field where Perry shot Mendez from behind, killing him. The four Latin Kings fled.

*Lara*, 181 F.3d at 202-03 (fourth and fifth alterations in original).

After a forty-four-day trial, a jury found Mr. Roman guilty of all counts with which the Government had charged him. The Court sentenced him to concurrent terms of life imprisonment as to Counts One, Two, and Four; ten-year terms of imprisonment as to Counts Five, Six, Seven, and Eleven, all to run concurrently with each other and with the life terms imposed for Counts One, Two, and Four; and a consecutive term of life imprisonment as to Count Twelve. The Court also imposed five years of supervised release. ECF No. 847 (Judgment). Mr. Roman appealed, but the First Circuit affirmed the judgments of conviction. The Supreme Court denied certiorari. *Roman v. United States*, 528 U.S. 1127 (2000).

Mr. Roman next moved to vacate sentence pursuant to 28 U.S.C. § 2255, alleging constitutional violations related to the empanelment of the jury and ineffective assistance of counsel. Finding no merit to Mr. Roman's claims of error,

4

the Court denied the Motion to Vacate. ECF No. 13 in CA 01-080-ML (Memorandum and Order of November 19, 2001).

After the Supreme Court decided *Johnson II*, 576 U.S. at 597 (finding residual clause of Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), unconstitutionally vague), Mr. Mr. Roman filed a *pro se* second Motion to Vacate under § 2255. He also sought leave from the First Circuit to file a second or successive motion. Before the circuit court ruled on Mr. Roman's request, the Office of the Federal Public Defender ("FPD") filed a "placeholder" Motion to Vacate, based on *Johnson II*, on Mr. Roman's behalf. The First Circuit eventually granted leave and directed that the Court docket Mr. Roman's motion as of the date he applied for leave in the circuit court. In light of that ruling, the Court denied the "placeholder" motion.

At the Court's direction, Mr. Roman, now represented by the FPD, filed a memorandum in support of the Motion to Vacate. The Government later filed a response in opposition to the Motion to Vacate, to which Mr. Roman replied. After receiving permission to do so, the Government filed a sur-reply. The Court held a hearing on the Motion to Vacate on September 30, 2021.

## STANDARD OF REVIEW

Section 2255 provides for post-conviction relief if the court sentenced a petitioner in violation of the Constitution or lacked jurisdiction to impose the sentence, if the sentence exceeded the statutory maximum, or if the sentence is otherwise subject to collateral attack. *United States v. Addonizio*, 422 U.S. 178, 185 (1979); *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). In trying to

5

collaterally attack his sentence, the petitioner bears the burden of proving "exceptional circumstances" that warrant redress under § 2255. *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980). For example, an error of law must constitute a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 428; *accord David*, 134 F.3d at 474.

## ANALYSIS

As noted above, Mr. Roman filed the Motion to Vacate (ECF No. 1232) after obtaining leave from the First Circuit to do so. He then filed a memorandum in support of the Motion to Vacate (ECF No. 1274). The Government then filed a response in opposition (ECF No. 1285), and Mr. Roman replied (ECF No. 1291). The Government filed a sur-reply (ECF No. 1293), and both parties have since submitted additional filings (ECF Nos. 1309, 1310, 1311). The Court conducted a hearing on the Motion to Vacate.

Mr. Roman argues that his § 924(c) conviction (Count XII) must be vacated because it is unclear whether the jury unanimously convicted him based on a valid predicate crime. ECF No. 1274 at 4, 12. Specifically, Mr. Roman argues that the conviction on Count XII was based on two crimes, conspiracy to murder Jose Mendez and the murder of Jose Mendez. *Id.* at 3; *see also id.* Ex. A (Redacted Superseding Indictment, ECF No. 1274-1) ¶¶ 29, 52. However, jurors were not required to decide (or specify) unanimously on which predicate they based Mr. Roman's 924(c) conviction, and one of them, conspiracy, is not a crime of violence. ECF No. 1274 at

6

4. Mr. Roman further argues that, even if it were clear that the 924(c) conviction was based on murder, murder under Rhode Island law encompasses theories of aiding and abetting as well as coconspirator liability, neither of which satisfies the force clause of § 924(c). *Id.* at 4, 13-15. Thus, neither conspiracy nor murder as charged here qualifies as a predicate crime of violence for the 924(c) conviction, and the conviction cannot stand. *Id.* at 4, 12-14, 15-16.

The Government first counters that Mr. Roman has procedurally defaulted his claim by failing to raise the argument that § 924(c) is unconstitutionally vague either at trial or on direct review. ECF No. 1285 at 1, 6-8. Substantively, the Government argues that, even though one of the two predicates supporting Mr. Roman's § 924(c) conviction is no longer valid, the other, VICAR murder, remains a crime of violence after *Davis. Id.* at 1. Further, the Government contends, the record shows that the jury relied on the VICAR murder of Jose Mendez to support the guilty verdict on the § 924(c) count and thus any error in the jury instructions on Count XII is harmless. *Id.* at 1, 19-23.

*Procedural Default*

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted); *see also Lassend v. United States*, 898 F.3d 115, 122 (1st Cir. 2018) ("[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows

cause and prejudice.") (alteration in original) (internal quotation marks omitted). "Cause" consists of "some objective factor external to the defense[.]" *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

A petitioner may show cause by showing that the claim was "'so novel that its legal basis [wa]s not reasonably available to counsel' at the time of the default." *Lassend*, 898 F.3d at 122 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)) (alteration in original). In *Reed*, the Supreme Court stated that, where the Supreme Court explicitly overrules one of its own precedents, "the failure of a defendant's attorney to have pressed such a claim . . . is sufficiently excusable to satisfy the cause requirement." 468 U.S. at 17; *see also Lassend*, 898 F.3d at 123 (quoting *Reed*, 468 U.S. at 17). In *Johnson II*, the original basis for Mr. Roman's motion, the Supreme Court expressly overruled two of its own earlier rulings that had rejected challenges to the ACCA's residual clause on grounds of constitutional vagueness. *Lassend*, 898 F.3d at 122 (citing *Sykes v. United State*s, 564 U.S. 1 (2011), and *James v. United States*, 550 U.S. 192 (2007)). Thus, as was the case in *Lassend*, the Court finds that Mr. Roman has shown cause for his procedural default. *See id.* at 123; *see also United States v. Garcia-Ortiz*, 904 F.3d 102, 106 (1st Cir. 2018) (citing *Lassend*, 898 F.3d at 122); *United States v. Varona*, No. 1:95-cr-1027, 2021 WL 2873793, at *3 (S.D.N.Y. July 8, 2021) (assuming that, without evidence that *Johnson II, Davis*, and *Sessions v. DiMaya*, 138 S. Ct. 1204 (2018), "were even a tiny blip on anybody's radar screen in 1997 or 1998") petitioner's "claim here is so novel that it was not reasonably available to counsel at the time" (internal quotation marks and citation omitted).

Mr. Roman must also show "actual prejudice" resulting from the errors on which his claim is based. *Lassend*, 898 F.3d at 123 (citing *United States v. Frady*, 456 U.S. 152, 168 (1982)); *see also Carrier*, 477 U.S. at 494 (noting that to show prejudice, the "habeas petitioner must show 'not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" (quoting *Frady*, 456 U.S. at 170)) (alteration in original); *Derman v. United States*, 298 F.3d 34, 45 (1st Cir. 2002) ("The showing of prejudice needed to cure a procedural default generally requires a habeas petitioner to demonstrate that there is a reasonable probability that the result of the trial would have been different absent the error.") (internal quotation marks omitted).  Thus, if Mr. Roman can prove that his conviction and enhanced sentence under § 924(c) were based on invalid predicates, he can argue actual prejudice, but if his challenge fails on the merits, "there cannot be actual prejudice because there would be no error from which such prejudice would flow." *Lassend*, 898 F.3d at 123.

Here, as in *Lassend*, the prejudice inquiry "dovetails with the merits inquiry . . . ." *Id.*; *see also United States v. Goodridge*, 392 F. Supp. 3d 159, 168 (D. Mass. 2019) (same).  Thus, the Court turns to the merits of Mr. Roman's claim.  *See Lassend*, 898 F.3d at 123; *see also Varona*, 2021 WL 2873793, at *3 (finding that petitioner had shown cause but could not show prejudice because motion failed on merits).

*Merits*

9

To recap, Mr. Roman was found guilty of many counts of a multi-count, multi-defendant Redacted Superseding Indictment.  Relevant to Mr. Roman's argument are: Count I, Racketeering Act Two, conspiracy to murder Jose Mendez and the murder of Jose Mendez; Count Four, VICAR murder of Jose Mendez; and Count XII, using or carrying a firearm during and in relation to a crime of violence, specifically the murder of Jose Mendez as charged in Racketeering Act Two, in violation of 18 U.S.C. § 924(c).  ECF No. 1274-1 ¶¶ 12-13, 17, 21.

At the time of Mr. Roman's conviction, a crime of violence was defined as:

an offense that is a felony and--

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).[2]  The former clause is commonly known as the "elements" or "force" clause and the latter as the "residual clause." *Davis*, 139 S. Ct. at 2324; *Shea v. United States*, 976 F.3d 63, 67 (1st Cir. 2020).  Following its reasoning in *Johnson II* and *Dimaya*, the Supreme Court held in *Davis* that the residual clause in § 924(c) was unconstitutionally vague.  139 S. Ct. at 2325-28, 2336.  Thus, for Mr. Roman's § 924(c) conviction to be valid, it must be based on a felony that satisfies the force

---

[2] "Physical force" means violent force. *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*") ("We think it clear that in the context of a statutory definition of '*violent felony*,' the phrase 'physical force' means *violent force*—that is, force capable of causing physical pain or injury to another person.").

10

clause's definition of a crime of violence. *See United States v. Tsarnaev*, 968 F.3d 24, 99 (1st Cir. 2020) ("With *Davis* on the books, that leaves only one potential path for treating the predicates as crime-of-violence offenses: the elements clause . . . ."), ; *id.* at 104 (noting that, after *Davis*, most conspiracies are not crimes of violence).

As noted, relief under § 2255 is available only in "exceptional circumstances," *Hill*, 368 U.S. at 428, and Mr. Roman bears the burden of establishing by a preponderance of the evidence that he is entitled to such relief, *Dimott v. United States*, 881 F.3d 232, 240 (1st Cir. 2018) ("This circuit has long held that federal post-conviction petitioners bear the burden of proof and production under § 2255, and must establish[ ] by a preponderance of the evidence that they are entitled to relief.") (alteration in original) (internal quotation marks omitted). In this context, "[t]o prove a *Johnson II* claim, the movant must show that—more likely than not—it was the use of the residual clause that led to the sentencing court's enhancement of his sentence. A mere possibility is not enough." *Id.* (internal citation and quotation marks omitted); *see also Shea*, 976 F.3d at 82 (stating, in context of *Johnson II*-type challenge under United States Sentencing Guidelines ("USSG"), that "to win on the merits of his *Johnson*-based challenge to his sentence, Shea will need to prove by a preponderance of the evidence that his sentence rested on the residual clause of the Career Offender Guideline.") (internal quotation marks omitted).

Mr. Roman argues that, because the jury form did not require unanimity as to which predicate formed the basis for his § 924(c) conviction, it is impossible to tell which did. ECF No. 1274 at 4. In other words, his § 924(c) conviction may have been

11

based on an invalid predicate. *See id.* at 4, 15-16; ECF No. 1291 at 7-8. Mr. Roman's

focus is on the Redacted Superseding Indictment, which charges in Count XII:

> On or about November 8, 1994, in the District of Rhode Island, the defendants, ROMAN and PERRY did knowingly use and carry firearms . . . during and in relation to a crime of violence, for which they may be prosecuted in a court of the United States, that is, the murder of Jose Mendez, as charged in Racketeering Act Two of this Indictment, in violation of 18 U.S.C. § 924(c).

ECF No. 1274-1 ¶ 52; *see also* ECF No. 1291 at 6.  Count I, Racketeering Act Two

alleges:

> The defendants named below committed the following acts, *any one of which alone* constitutes the commission of Racketeering Act Two:
>
> a. <u>Conspiracy to Murder Jose Mendez</u>
>
> In or about October and November 1994, in the District of Rhode Island and elsewhere, the defendants SEPULVEDA, BOYD, ROMAN, PERRY and others known and unknown to the Grand Jury, did knowingly and intentionally agree, combine, confederate, contrive and conspire together to do an unlawful act, to wit: to murder Jose Mendez, in violation of §§ 11-1-6 and 11-23-1 of the General Laws of Rhode Island, 1956, as amended (reenactment of 1981).
>
> b. <u>Murder of Jose Mendez</u>
>
> On or about November 8, 1994, in the District of Rhode Island, the defendants, SEPULVEDA, BOYD, ROMAN, PERRY and others known and unknown to the Grand Jury, did murder Jose Mendez, in violation of §§ 11-23-1 and 11-1-3 of the General Laws of Rhode Island, 1956, as amended (reenactment of 1981).

ECF No. 1274-1 ¶ 29 (emphasis added).  The verdict form simply required the jury to

indicate whether Mr. Mendez was guilty of Racketeering Act Two, not to specify the

basis for its verdict. ECF No. 1274 at 4; *see also* id., Ex. G (Jury Form, ECF No. 1274-

7) at 3. So, Mr. Roman contends that his § 924(c) conviction may have been based on

the conspiracy to murder Mr. Mendez, which both parties agree is no longer a valid predicate after *Davis*. ECF No. 1274 at 9-10; ECF No. 1285 at 12-13; ECF No. 1291 at 5.

The Government, on the other hand, argues that the jury's Count XII verdict was based on the murder of Jose Mendez, as charged in Racketeering Act Two and in Count IV, VICAR murder.[3]  ECF No. 1285 at 1, 13.  The Government focuses on the jury instructions for Count XII, which cross-reference other instructions:

> In considering this charge, you are to apply the same instructions I gave you for Count Ten, as well as the instructions I gave you with respect to the murder of Jose Mendez, in connection with Act of Racketeering Two in Count One and Count Four.

ECF No. 1274, Ex. B (Jury Instructions, ECF No. 1274-2) at 3;[4] *see also* ECF No. 1293 at 2.  The instructions for Count X, a § 924(c) charge against different defendants relating to a different murder, state:

> In order to sustain its burden of proof for the crime of using or carrying a firearm during and in relation to a crime of violence, the government must prove the following two elements beyond a reasonable doubt:

---

[3]  Count IV, VICAR murder, alleges that:

On or about November 8, 1994, in the District of Rhode Island, for the purpose of gaining entrance to and maintaining and increasing their position in the Latin Kings, an enterprise engaged in racketeering activity . . . , the defendants, SEPULVEDA, BOYD, ROMAN, PERRY and others known and unknown to the Grand Jury, did murder Jose Mendez, in violation of §§ 11-23-1 and 11-1-3 of the General Laws of Rhode Island, 1956, as amended (reenactment of 1981).

ECF No. 1274-1 ¶ 41.

[4]  Page citations, where different, refer to the pagination generated by the Court's electronic filing system.

13

(1) that the defendant committed the crime of murder as charged in the indictment; and

(2) that during and in relation to the commission of that crime, the defendant knowingly used or carried a firearm.

In determining whether the defendant used or carried a firearm, you may consider all of the factors received in evidence in the case, including the nature of the underlying crime of violence alleged, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.

The government need only prove that the defendant used the firearm or that he carried the firearm. It need not prove both. The mere possession of a firearm is not sufficient to convict under this statute, however. Rather, the government must show the active employment of the firearm. Examples of "active employment" include, but are not limited to, brandishing, displaying, firing, attempting to fire, or making references to a firearm that are calculated to bring about a change in circumstances.

The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, attempted use, or threatened use of physical force against the person or property of another, or an offense by its very nature involves a substantial risk that such physical force may be used in committing the offense.[5]

I instruct you that as a matter of law the offense alleged in Act of Racketeering One, the murder of Temujin Vandergroen, is a crime of violence, and further is a crime which "may be prosecuted in a court of the United States."

---

[5] To be clear, when the Court instructed the jury in 1997, its instructions were valid. *Davis*, decided more than twenty years later, eliminated the residual clause as part of the definition of crime of violence. 139 S. Ct. at 2336; *see also, e.g., Speed v. United States*, No. 10 cv 3333, 2020 WL 6290385, at *4 (S.D.N.Y. Oct. 27, 2020) ("At trial, the Court gave what was then a proper instruction on the law: that both Count One (the substantive RICO charge) and Count Two (RICO conspiracy) were crimes of violence and therefore possible predicates for finding Speed guilty on Count Three [the 924(c) charge].").

> You are to apply the same instructions that I have already given you as to the murder of Temujin Vandergroen in Count One, Act of Racketeering One, in deliberating on this charge.
>
> . . .

ECF No. 1274, Ex. C (Jury Instructions, ECF No. 1274-3) at 3-4.

The Court instructed the jury on conspiracy to murder and murder in Racketeering Act One, the murder of Temujin Vandergroen. ECF No. 1274, Ex. F (Jury Instructions, ECF No. 1274-6) at 3-8. These instructions were incorporated by reference in the instructions for Racketeering Act Two. ECF No. 1274, Ex. E (Jury Instructions, ECF No. 1274-5) at 3, 4.

Count I, Racketeering Act One, like Racketeering Act Two, included both a conspiracy and a murder charge.[6] ECF No. 1274-1 ¶ 28. The Court first instructed the jury on conspiracy:

> Section 11-1-6 of the General Laws of Rhode Island makes it unlawful for any person to conspire with another to commit an offense punishable under the laws of the State of Rhode Island.
>
> The crime of conspiracy is the combination of two or more persons to commit an unlawful act. No action in furtherance of the conspiracy beyond the making of the unlawful agreement need occur for the crime of conspiracy to be committed. Indeed once a common unlawful agreement has been made, the crime of conspiracy is complete. You may infer the existence of a conspiracy from proof of relationship, conduct, circumstances and actions of the parties. However, the fact that a defendant knew or should have known that others were conspiring to commit an offense is insufficient to establish liability on the part of that defendant for the conspiracy.

---

[6] Count I, Racketeering Act One also included an arson charge. ECF No. 1274-1 ¶ 28.

ECF No. 1274-6 at 3; *see also* R.I. Gen. Laws § 11-1-6.  The Court then turned to the

murder of Temujin Vandergroen (with which Mr. Roman was not charged):

> Section 11-23-1 of the General Laws of Rhode Island defines murder as the "unlawful killing of a human being with malice aforethought."  In order to find that defendant Perry and/or defendant Lara committed this act, the government must prove beyond a reasonable doubt that the defendant unlawfully killed a human being; and that he did so with malice aforethought.
>
> The term "unlawful" refers to whether or not the killing was justified, that is, whether or not it was committed in self-defense.  The terms "killing" and "human being" are self-explanatory and are to be given their common everyday meaning.  "Malice" exists where a defendant either intended to kill or to inflict great bodily harm, or engaged in conduct which evidences an extreme indifference to the sanctity of human life.  Malice can be inferred from the attending circumstances surrounding a defendant's conduct.  It can also be inferred from circumstances where there is a disparity in size and strength between the victim and an assailant.
>
> Having defined the crime of murder for you, I must now define three additional doctrines that are directly related to this count.[7]
>
> . . .
>
> The second doctrine is that of "aiding and abetting."  Section 11-1-3 of the General Laws of Rhode Island provides that, "every person who shall aid, assist, abet, counsel, hire, command, or procure another to commit any crime or offense, shall be proceeded against as a principal. . . ."  This means that a person who aids or assists another to commit an offense is just as guilty as the person who actually commits the offense.
>
> While the mere presence at the scene of a crime is not sufficient for you to find someone guilty of that crime, it is a factor that must form part of your determination of the guilt of the defendant.  Beyond mere presence or mere knowledge that a crime is being committed, the circumstances must establish that a defendant shared in the criminal intent of the principal and that there must be a community of unlawful purpose at

---

[7]  The first doctrine explained was "felony murder," ECF No. 1274-6 at 5-6, which is irrelevant to the charges against Mr. Roman.

the time the act is committed.  As the term "aiding and abetting" implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed.  It implies some conduct of an affirmative nature.  Mere negative acquiescence is not sufficient.

Factors which you may consider include the relationship or association between the perpetrator and those accused of aiding and abetting, the knowledge that a crime was about to be committed, and flight from the scene.

The third doctrine is that of coconspirator liability.  A coconspirator may be guilty of an offense even though he did not directly participate in the acts constituting that offense.  A coconspirator is responsible not only for his own acts, but also for the substantive acts of his coconspirators that are done in furtherance of the conspiracy, and are a reasonably foreseeable result of that conspiracy.  Indeed, a coconspirator who commits an offense pursuant to a conspiracy is held to be the agent of the other coconspirators.  As to those acts of his coconspirators, a defendant need not enter into a new agreement on those acts in order to be responsible and liable for them.

ECF No. 1274-6 at 4-8.[8]

Turning to Racketeering Act Two, the Court stated:

The indictment alleges that defendants George Sepulveda, Terrence Boyd, Shariff Roman and George Perry committed two offenses, either of which could constitute an act of racketeering.  Those two crimes are:

(1) Conspiracy to murder Jose Mendez; and

(2) the murder of Jose Mendez.

You must consider the evidence and reach your decision regarding each defendant separately, even though the crimes charged are the same for defendants Sepulveda, Boyd, Roman, and Perry.  Indeed, in order to find that any of these particular defendants are guilty of committing Act of Racketeering Two, you must conclude that the government has proven

---

[8] *See Pinkerton v. United States*, 328 U.S. 640 (1946), regarding coconspirator liability.

17

beyond a reasonable doubt that that particular defendant committed either of the two crimes charged.

. . .

As I have already noted, Section 11·1·6 of the General Laws of Rhode Island makes it unlawful for any person to "conspire with another to commit an offense punishable under the laws of Rhode Island," and Section 11·23·1 defines the crime of murder as the "unlawful killing of a human being with malice aforethought." You are to apply my previous instructions as to both of these issues in deciding whether defendant Sepulveda, Boyd, Roman, and/or defendant Perry, conspired to murder Jose Mendez.

The second crime charged is that of murder. . . .

Again I have already instructed you on the law of murder in Rhode Island. You should apply those same instructions here as to whether the defendants murdered Jose Mendez, subject to two considerations.

First, the government does not allege that Jose Mendez was killed during the perpetration of a robbery. Thus, my previous instructions as to felony murder are not applicable.

Second, my previous instructions as to the law of aiding and abetting, and as to the law of coconspirator liability, are applicable. In this vein, I would remind you that a person who counsels, hires, commands, or procures another to commit a murder is just as responsible for that murder as the actual killer. Further, one who conspires with another person is guilty of any crimes carried out in furtherance of that conspiracy, as long as those crimes are a reasonably foreseeable result of the conspiracy.

Thus, if you conclude that any of the defendants charged either aided or abetted another defendant, or conspired to kill Jose Mendez, you may find him guilty of the murder of Jose Mendez even though he did not physically participate in the murder, or was not present at the murder scene.

ECF No. 1274·5 at 2·5.

As to Count Four, VICAR murder of Jose Mendez, the Court stated:

18

> Count IV charges that on or about November 8, 1994, in the District of Rhode Island, defendants Sepulveda, Boyd, Roman, and Perry, did murder Jose Mendez, in violation of sections 11-23-1 and 11-1-3 of the General Laws of Rhode Island, for the purposes of gaining entrance to and maintaining and increasing their positions in the Latin Kings, an enterprise engaged in racketeering activity, in violation of title 18, sections 1959(a) and section 2 of the United States Code.

ECF No. 1274, Ex. D (Jury Instructions, ECF No. 1274-4) at 2-3.   The Court continued:

> In order to prove that any of the defendants named in Counts Three through Seven violated section 1959(a), the government must establish each of the following three elements beyond a reasonable doubt as to each offense charged: That is,
>
> > (1) that there existed, as charged in the indictment, an enterprise engaged in racketeering activity;
> >
> > (2) that on or about the dates charged, the defendant committed the crime alleged; and
> >
> > (3) that the defendant committed the crime for the purpose of gaining entrance to, increasing or maintaining his position in the enterprise.
>
> . . .
>
> The second element that the government must prove beyond a reasonable doubt is that on or about the dates charged in those counts, the defendant committed the crime alleged, that is, murder, conspiracy to murder, or aiding and abetting murder.  Again, I have already defined these terms in connection with Counts One and Two, and you are to apply those instructions in deliberating as to this element.
>
> . . .

ECF No. 1285, Ex. 3 (Jury Instructions, ECF No. 1285-3) at 9-10.[9]

---

[9] The omitted instructions were for the RICO count, Count I.

Against this backdrop, the Court considers whether Mr. Roman has met his burden of proving that his conviction was, more likely than not, based on Racketeering Act Two (a), the conspiracy charge, which post-*Davis* is no longer a valid predicate crime of violence, *see Dimott*, 881 F.3d at 240; *see also United States v. Oladimu*, No. 1:01-cr-10198, 2020 WL 2104784, at *5 (D. Mass. May 1, 2020) (noting petitioner's burden to "show that the residual clause more likely than not provided the basis for the ACCA[10] enhancement"), and not Racketeering Act Two (b), the murder charge, which remains a valid predicate act under the force clause, *see United States v. Baez-Martinez*, 950 F.3d 119, 127 (1st Cir. 2020) (holding that second-degree murder under Puerto Rico law qualified as a violent felony under the ACCA); *accord Umana v. United States*, 229 F. Supp. 3d 388, 392 (W.D.N.C. 2017) (concluding that VICAR murder was crime of violence under § 924(c)'s force clause).[11]  Based on the following analysis, the Court concludes that he has not.

---

[10]  Armed Career Criminal Act, 18 U.S.C. § 924(e)(1).

[11]  In *Baez-Martinez*, the First Circuit addressed whether Puerto Rico's second-degree murder offense qualified as a crime of violence under the force clause.  950 F.3d at 127.  The court held that it did.  *See id.* (holding that Puerto Rico second-degree murder qualified as a violent felony under the ACCA even though the statute only required a mens rea of "malice-aforethought" recklessness).  The Court of Appeals stated:

> Murder in Puerto Rico, like most states, is defined as the "killing of a human being with malice aforethought."  Second-degree murder is any murder that is not first-degree murder, where first-degree murder includes any "willful, deliberate, and premeditated killing," plus a few other methods.  The Supreme Court of Puerto Rico has stated that "[t]he concept of <u>malice aforethought</u> implies the absence of just cause or excuse in causing death and implies, also, the existence of the intent to

20

kill a fellow human being.  For second-degree murder, though, "malice aforethought is enough, without the specific intent to kill."  Malice aforethought "denotes a state or condition in the actor formed by an inherent deficiency in his or her sense of morality and righteousness as a result of having stopped caring about the respect and safety of human life."  In other words, Puerto Rico recognizes "depraved heart" murder and, like many states, classifies this as second-degree murder in most cases.

*Id.* at 128 (alteration in original) (internal citations omitted).

Similarly, under Rhode Island law, "[t]he unlawful killing of a human being with malice aforethought is murder."  R.I. Gen. Laws § 11-23-1.  The statute goes on to list a number of ways by which first-degree may be committed.  *See id.*  "Any other murder is murder in the second degree."  *Id.; see also State v. Gillespie,* 960 A.2d 969, 975-77 (R.I. 2008) (discussing first- and second-degree murder under Rhode Island law).

In evaluating whether a crime constitutes a "crime of violence" under § 924(c)'s force clause, the Court uses the "categorical approach," which requires the Court "to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime."  *Davis,* 139 S. Ct. at 2328 (quoting *Leocal v. Ashcroft,* 543 U.S. 1, 7 (2004)); *see also Boulanger,* 978 F.3d at 28-29 (quoting *Baez-Martinez,* 950 F.3d at 124).  "[T]he least culpable conduct for which there is a realistic probability of a conviction under the statute," *Boulanger,* (quoting *Baez-Martinez,* 950 F.3d at 124), must satisfy § 924(c)'s force clause, *id.* at 29, that is, it must "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another," *Baez-Martinez,* 950 F.3d at 124 (alteration in original).  Under § 11-23-1, the Rhode Island murder statute, that conduct is second-degree murder.  As noted, *Johnson I* defined "physical force" as "*violent* force—that is, force capable of causing physical pain or injury to another person."  559 U.S. at 140.  "And since murder always results in death (and death is the ultimate injury), the violent-force requirement is satisfied."  *Baez-Martinez,* 950 F.3d at 132; *see also Tsarnaev,* 968 F.3d at 104 (citing *Baez-Martinez,* 950 F.3d at 132.

Accordingly, utilizing the categorical approach and following *Baez-Martinez,* the Court concludes that second-degree murder under § 11-23-1 is a crime of violence under § 924(c).

The Court begins with the Redacted Superseding Indictment: what it says and—significantly—what it does not say. As stated above, the Redacted Superseding Indictment for Count XII alleges:

> On or about November 8, 1994, in the District of Rhode Island, the Defendants, ROMAN and PERRY did knowingly use and carry firearms . . . during and in relation to a crime of violence, for which they may be prosecuted in a court of the United States, that is the *murder* of Jose Mendez, as charged in Racketeering Act Two of this Indictment, in violation of 18 U.S.C. 924(c).

ECF No. 1274-1 ¶ 52 (emphasis added). Count XII does <u>not</u> say, "during and in relation to a crime of violence, for which they may be prosecuted in a court of the United States, as charged in Racketeering Act Two of this Indictment . . . ." It specifically includes the word "murder," while Racketeering Act Two contains both (a) conspiracy to murder Jose Mendez and (b) the murder of Jose Mendez, "any one of which alone constitutes the commission of Racketeering Act Two[.]" *Id.* ¶ 29. The omission of the conspiracy portion of Racketeering Act Two in Count XII implies that the Grand Jury focused on the murder of Mr. Mendez as the predicate act for Count XII.[12]

---

[12] The same is true for Count X. The crime of violence on which Count X was predicated is stated in the Redacted Superseding Indictment as "the murder of Temujin Vandergroen, as charged in Racketeering Act One of this Indictment . . . ." ECF No. 1274-1 ¶ 50. Racketeering Act One encompasses conspiracy, murder, and arson charges, *see id.* ¶ 28, "any one of which alone constitutes the commission of Racketeering Act One," *id.* Count X, however, refers only to "the murder of Temujin Vandergroen . . . ." *Id.* ¶ 50.

The jury instructions make the point more explicitly.  As explained above, the jury instructions for Count XII incorporated the instructions for Count X (a different § 924(c) count), which, in turn, incorporated the instructions for Count I, Racketeering Act One (a different murder).[13]  *See* ECF No. 1274-2 at 3; ECF No. 1274-3 at 4.  The jury instructions for Count X also focused on the murder portion of Racketeering Act One which, like Racketeering Act Two, included a conspiracy charge (as well as an arson charge).  *See* ECF No. 1274-3 at 2 (describing predicate crime of violence as "the murder of Temujin Vandergroen, as charged in Act of Racketeering One"); *see also* ECF No. 1274-1 ¶ 28 (alleging (a) conspiracy to rob Temujin Vandergroen, (b) the murder of Temujin Vandergroen, and (c) arson of a motor vehicle).  Again, the Court's—and the Grand Jury's—focus was on the murder, not conspiracy or arson, as the crime of violence on which Count X was based.  Further, in instructing the jury on Count X, the Court explicitly stated: "I instruct you that as a matter of law the offense alleged in Act of Racketeering One, the murder of Temujin Vandergroen, is a crime of violence . . . ."  ECF No. 1274-3 at 4.

Returning to Count XII, the jury instructions provide more context.  As did the Redacted Superseding Indictment, the jury instructions for Count XII described the crime of violence that served as the predicate act as "the murder of Jose Mendez . . . ."  ECF No. 1274-2 at 3.  The Court continued:

> In considering this charge, you are to apply the same instructions I gave you for Count Ten, as well as the instructions I gave you with respect to

---

[13]    The Court again notes that Mr. Roman was not charged in either Racketeering Act One or Count X.

the murder of Jose Mendez, in connection with Act of Racketeering Two in Count One and Count Four.

*Id.* In its instructions for Racketeering Act Two, the Court reiterated the instructions it had given the jury for Racketeering Act One on the definition of murder in Rhode Island, aiding and abetting, and coconspirator liability. ECF No. 1274-5 at 3-5. As for Count IV, the VICAR murder of Jose Mendez, the Court referred to the instructions it had given on murder, conspiracy to murder, and aiding and abetting murder. ECF No. 1285-3 at 2-3, 4-5.

This is not a situation in which the jury instructions conflicted with the indictment. *Cf. United States v. White*, 510 F. Supp. 3d 433, 445-48 (W. D. Tex. 2020) (vacating § 924(c) convictions where defendants were indicted for Hobbs Act robbery, but the court instructed the jury on Hobbs Act extortion, resulting in uncertainty as the crime of conviction and, by extension, whether it was a crime of violence). Here, the jury instructions were in accord with the Redacted Superseding Indictment. According to the Redacted Superseding Indictment, the predicate crime of violence for Count XII was the murder of Jose Mendez. ECF No. 1274-1 ¶ 52. The jury instructions for Count XII incorporated the instructions for Racketeering Act Two (the murder of Jose Mendez)—which, in turn, referenced the jury instructions for Count I, Racketeering Act One (the murder of Temujin Vandergroen)—Count IV (the VICAR murder of Jose Mendez), and Count X (a separate § 924(c) charge based on the murder of Temujin Vandergroen). ECF No. 1274-2 at 3. Neither the Redacted Superseding Indictment nor the jury instructions on Count X and Count XII

24

referenced the conspiracy portions of Count I, Racketeering Acts One and Two, respectively.

There can be little doubt that both the Redacted Superseding Indictment and the jury instructions for Count XII focused on the murder of Jose Mendez as the predicate act for the § 924(c) charge. Thus, the Court cannot find that the jury's Count XII verdict was more likely than not predicated on Racketeering Act Two (a), the conspiracy charge. Thus, the Court concludes that Mr. Roman has not sustained his burden of proving that it is more likely than not that the jury's guilty verdict on the § 924(c) charge was based on an invalid predicate.

Mr. Ramon still maintains that the Court's use of the general verdict form and lack of instruction as to unanimity for Racketeering Act Two leaves open the possibility that the jury did not unanimously find Mr. Ramon guilty of the murder of Jose Mendez, as charged in Racketeering Act Two (b). *See* ECF No. 1274 at 4, 12; ECF No. 1291 at 7-8. As Mr. Roman suggests, some jurors may have found him guilty of the murder, some the conspiracy to murder, and some both. ECF No. 1291 at 7-8; *see, e.g., In re Gomez*, 830 F.3d 1225, 1227 (11th Cir. 2016) ("[A] general verdict of guilty does not reveal any unanimous finding by the jury that the defendant was guilty of conspiring to carry a firearm during one of the potential predicate offenses, all of [the] predicate offenses, or guilty of conspiring during some and not others."); *United States v. Ivory*, Crim. Action No. 04-20044, 2020 WL 3832929, at *4 (D. Kan. July 8, 2020) ("The jury returned a general verdict of guilty on Count 11, which did not include a finding that defendant was guilty of using a firearm during the

commission of the conspiracy to kill a witness (which is not a crime of violence) or the attempted killing of a witness (which is a crime of violence), or both."). Therefore, according to Mr. Roman, it is not certain that the "crime of violence" required to convict Mr. Ramon under § 924(c) in Count XII was based on a valid predicate crime. ECF No. 1274 at 4, 9-10; ECF No. 1291 at 11-12.

"The requirement that a federal jury be unanimous is a bedrock principle of our criminal jurisprudence." *United States v. Lee*, 317 F.3d 26, 35 (1st Cir. 2003) (citing *Richardson v. United States*, 526 U.S. 813, 817 (1999); *Schad v. Arizona*, 501 U.S. 624, 634 n.5 (1991) (plurality opinion)). However:

> The unanimity requirement does not impose a rule that all twelve jurors in a federal criminal case must agree on every last detail. Sovereigns define crimes by enumerating their factual elements, and the unanimity requirement attaches to those elements. To that extent—and only to that extent—unanimity is an indispensable condition precedent to conviction. . . . Thus, if a jury is confronted with divergent factual theories in support of the same ultimate issue, courts generally have held that the unanimity requirement is met as long as the jurors are in agreement on the ultimate issue (even though they may not be unanimous as to the precise theory).

*Id.* at 36 (internal citations omitted); *see also United States v. Reeder*, 170 F.3d 93, 105 (1st Cir. 1999) ("In *Schad v. Arizona*, the Supreme Court held that, in returning general verdicts in cases in which the government has alleged in a single count that the defendant committed the offense by one or more specified means, jurors are not required to agree upon a single means of commission. While a jury must agree on all the elements of an offense, it need not agree on the means by which all the elements were accomplished.") (internal citations omitted). The *Reeder* court concluded that

26

"[w]hile the jury had to unanimously agree that Reeder knowingly participated in a scheme to defraud—an element of the crime—they did not, contrary to Reeder's contention, have to unanimously agree on each piece of evidence offered to prove Reeder's participation." *Id.; see also Maxwell v. Thaler*, 350 F. App'x 854, 857 (5th Cir. 2009) (following *Schad* and rejecting challenge to jury instructions based on court's failure to require jury to agree unanimously which alleged predicate offense, robbery or kidnapping, rendered murder a capital offense); *Obershaw v. Lanman*, 453 F.3d 56, 57, 64 (1st Cir. 2006) (rejecting argument that defendant's conviction was unconstitutional because jury was not instructed it had to be unanimous as to which particular factors supporting his conviction for first degree murder based on extreme atrocity or cruelty were present). *But see Gomez*, 830 F.3d at 1227 (noting "'dangers' that may lurk in indictments that list multiple potential predicate offenses in a single § 924(c) count'").

The Supreme Court has said that "[a] conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam). "[A] reviewing court finding such error should ask whether the flaw in the instructions 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *see also Ortiz-Graulau v. United States*, 756 F.3d 12, 20 (1st Cir. 2014) ("On collateral review, the inquiry is whether any trial error had a 'substantial and injurious effect or influence in determining the jury's verdict.'") (quoting *Brecht*, 507 U.S. at 638); *Ivory*,

27

2020 WL 3832929, at *4 ("On habeas review . . . a defendant is not entitled to relief unless a constitutional error had a substantial and injurious effect or influence in determining the jury's verdict.") (internal quotation marks omitted); *Durfee v. United States*, No. 16-cv-280, 2020 WL 1942324, at *3 (D.N.H. Apr. 20, 2020) (citing *Ortiz-Graulau*, 756 F.3d at 20); *Johnson v. United States*, CR-05-920, 2019 WL 1790218, at *5 (C.D. Cal. Apr. 23, 2019) (citing *Hedgpeth*, 555 U.S. at 58, and quoting *Brecht*, 507 U.S. at 623).   In the circumstances presented here,

> constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory.  On review under § 2255, the harmless error standard applies to constitutional errors due to flawed jury instructions.  More specifically, the harmless error standard applies in § 2255 cases where the petitioner challenges a § 924(c) jury instruction on the ground that it included an invalid predicate offense.

*Durfee*, 2020 WL 1942324, at *3 (internal citations and quotation marks omitted). Trial error is considered harmless "if it is highly probable that the challenged action did not affect the judgment." *Id.* (internal quotation marks omitted); *see also Scott v. United States*, 08 Cr. 360, 2021 WL 5745699, at *3 (S.D.N.Y. Dec. 2, 2021) ("In the Second Circuit, the Court of Appeals has applied [*Hedgpeth*] to mean a defendant is not prejudiced by an infirm instruction if the jury would have necessarily found the [defendant] guilty on one of the properly instructed theories of liability.") (second alteration in original) (internal quotation marks omitted).   It is the Government's burden to show that the trial error was harmless. *Sustache-Rivera v. United States*, 221 F.3d 8, 18 (1st Cir. 2000).

In *Durfee*, the jury was instructed that charges of conspiracy to rob and robbery of a supermarket were both predicate crimes of violence for purposes of an alleged § 924(c) offense. 2020 WL 1942324, at *4. The jury found the defendant guilty of the § 924(c) charge, but was not asked to, and did not, identify the relevant predicate offense. *Id.*

Durfee moved to vacate his § 924(c) conviction pursuant to § 2255 after *Davis*. *Id.* at *1-2. In opposition, the government argued that "based on the evidence the jury could not have found that Durfee used or carried a gun in furtherance of the conspiracy, but not the robbery." *Id.* at *4. The court stated:

> Courts that have considered the effect of alternative predicate offense instructions on a § 924(c) charge, when one or more of the potential predicate offenses was invalid, have applied that reasoning.   When the valid and invalid predicate offenses were not coextensive and instead involved different criminal activities, a reasonable probability exists that the jury would not have found a crime of violence absent the invalid predicate offense.
>
> . . .
>
> On the other hand, when the valid and invalid predicate offenses are coextensive, a reasonable probability does not exist that the jury convicted based only on the invalid offense. Under those circumstances, the erroneous instruction was harmless.

*Id.* (citing cases) (internal footnote and citations omitted); *see also McDonald v. United States*, No. 17-cv-329, 2021 WL 260397, at *1 (D.N.H. 2021) ("The jury instructions given with respect to the Section 924(c) counts, while retroactively rendered erroneous by the *Davis* decision, were nevertheless harmless, given that the conspiracy to rob and the substantive robbery counts (the potential predicates)

were factually and pragmatically coextensive.  The robbery offenses qualified as 'crimes of violence' predicates, and the jury's verdict on the Section 924(c) counts remain valid."); *Rosario Figueroa v. United States*, No. 16-CV-4469, 2020 WL 2192536, at *4 (S.D.N.Y. May 6, 2020) ("The Second Circuit has recognized . . . that even in cases with general verdicts, it may not be impossible to tell which ground the jury selected; the conviction need not be vacated if the jury would have necessarily found the defendant guilty on the valid ground.  In the context of § 924(c), when a conviction rests on the use of a gun in relation to multiple predicates, and one of the predicates is later found to be invalid, the conviction may still survive if the § 924(c) charge is clearly supported by a [ ] predicate presenting no legal concern.") (second alteration in original) (internal citations and quotation marks omitted).

Here, the Government argues persuasively that the valid and invalid predicates are coextensive.  ECF No. 1285 at 22-23.  The same people convicted of conspiring to murder Jose Mendez were the same people convicted of murdering Mr. Mendez.  *See* ECF No. 1274-1 ¶ 29; *see also Durfee*, 2020 WL 1942324, at *5.  The objective of the conspiracy did not encompass a wider range of criminal activities than the murder of Jose Mendez.  *See* ECF No. 1274-1 ¶ 29; *see also Durfee*, 2020 WL 1942324, at *5 (finding that defendant "ha[d] not shown there was evidence at trial that Durfee used that gun or any other gun or engaged in other activity in furtherance of the Vista Foods robbery conspiracy that was separate from the robbery itself").  Rather, the objective of the conspiracy was the murder of Jose Mendez, *see* ECF No. 1274-1 ¶ 29, and Mr. Mendez was, in fact, murdered, *see id.*; *see also Lara*, 181 F.3d

30

at 203. Thus, as was the case in *Durfee*, the conduct involved in both sections of Racketeering Act Two was intertwined. *See* 2020 WL 1942324, at *5 ("[T]he conspiracy and the robbery involved the same actors and actions."). Therefore, the use of a general verdict form and lack of jury instruction on unanimity as to Racketeering Act Two did not have a substantial and injurious effect on the verdict. *See id.* ("For that reason, the Hobbs Act robbery of the Vista Foods supermarket was the likely predicate offense, and the jury could not have found that conspiracy alone was the predicate offense for [the § 924(c) charge]."); *see also Ivory,* 2020 WL 3832929, at *4 ("The Court cannot envision how the jury could have concluded that the firearm had been discharged in connection with only one of the two predicate offenses."); *Durfee,* 2020 WL 1942324, at *5 ("If the jury convicted the petitioner of the Hobbs Act robbery, it does not make sense that the jury could find the petitioner used a firearm in the conspiracy but not the robbery."); *Vilar v. United States,* No. 96-CR-551, 2020 WL 85505, at *3 (S.D.N.Y. Jan. 3, 2020) ("There is simply no interpretation of the facts in the record that would have allowed a finding that Petitioner used the gun in furtherance of the conspiracy but not the attempt[ed carjacking]."); *United States v. Francies,* No. 1:16-cv-5531, 2019 WL 4120444, at *7 (N.D. Ill. Aug. 28, 2019) ("The only rational interpretation of the evidence at trial is that the jury based its conviction for the 924(c) count on the actual attempted robbery that was committed at gunpoint.").

Lending further support to the Court's conclusion is the fact that Mr. Roman was convicted of the same conduct, the murder of Jose Mendez, in Count IV, VICAR

31

murder. *See Lara*, 181 F.3d at 202. The conduct there is intertwined with the conduct in Racketeering Act Two (b), although the Redacted Superseding Indictment does not include Count IV as a predicate for Count XII. *See* ECF No. 1274-1 ¶¶ 41, 52. If the jury found Mr. Roman guilty of murdering Mr. Mendez in Count IV, it stands to reason that the jury also found him guilty of the murder of Jose Mendez in Racketeering Act Two.[14] *See, e.g.*, *United States v. Eldridge*, 2 F.4th 27, 39 (2d Cir. 2021) ("All of this testimony was entwined—with the agreement to commit the robbery, the attempt to commit the robbery, the kidnapping, and Eldridge's brandishing of the gun forming part of a single narrative. On this evidence, it is inconceivable that the jury could have returned a guilty verdict on any of these counts (as it did on all of them) without concluding that, at a minimum, Eldridge attempted to rob Johnson of his drugs, and that he did so using a gun."); *id.* ("Indeed, the guilty verdicts on Counts Five, Six, and Seven, viewed together, reinforce the conclusion that the jury would have convicted Eldridge on Count Seven if the only theory had been attempted robbery."). Thus, any error in failing to instruct the jury regarding unanimity as to Racketeering Act Two did not have a substantial and injurious effect on the verdict and is, therefore, harmless. *See Ortiz-Graulau*, 756 F.3d at 20; *Sustache-Rivera*, 221 F.3d at 18; *see also* ECF No. 1285 at 22-23.

---

[14] To the extent Mr. Ramon argues the Court erred in incorporating the jury instruction for Count IV into its instruction for Count XII, the Court finds that any such error did not have a substantial and injurious effect on the verdict and is therefore harmless, for the reasons stated above.

Given the Redacted Superseding Indictment's language in Count XII (focusing on the murder of Jose Mendez, as charged in Racketeering Act Two (b)), the similar language in Count X (referring to the murder of Temujin Vandergroen, as charged in Racketeering Act One), the Court's instruction for Count X that murder was a crime of violence, and the fact that the jury convicted Mr. Roman of the murder of Mr. Mendez in Count IV (VICAR murder), the Court finds that Mr. Ramon has not met his burden of proving that it is more likely than not that the jury found him guilty of violating § 924(c) based on an invalid predicate, conspiracy to murder Jose Mendez as charged in Racketeering Act Two (a). *See Dimott*, 881 F.3d at 240 (noting petitioner's burden to show that it was more likely than not that "it was the use of the residual clause that led to the sentencing court's enhancement of his sentence," and that "[a] mere possibility is not enough"). Further, the use of the general verdict form and lack of instruction on unanimity with respect to Racketeering Act Two did not have a substantial and injurious effect on the jury's verdict on Count XII, the § 924(c) charge. *See Ortiz-Graulau*, 756 F.3d at 20; *McDonald*, 2021 WL 260397, at *1.

Mr. Roman's remaining argument is that, even assuming the jury predicated its Count XII verdict on the murder portion of Count I, Racketeering Act Two (as opposed to conspiracy to murder), that verdict still cannot stand. ECF No. 1274 at 14-15. This, too, is because the jury returned a general verdict form. *Id.* at 12-13, 14. Put differently, the jury did not have to find unanimously that Mr. Roman committed the murder of Jose Mendez as a principal, aider and abettor, or coconspirator. *Id.* at 14; ECF No. 1291 at 13. According to Mr. Roman, under the categorical or modified

33

categorical approach, neither aiding and abetting nor coconspirator liability contains, as an element, the use or threatened use of force, as required by § 924(c). ECF No. 1274 at 13, 14-15; ECF No. 1291 at 12-13. Thus, Mr. Roman argues that murder, as charged in this case, cannot serve as a predicate crime of violence under the force clause of § 924(c) because Mr. Roman may have been found guilty as an aider and abettor or as a coconspirator. *See* ECF No. 1274 at 12-13, 14-15.

The Government, on the other hand, argues that aiding and abetting as well as coconspirator liability are theories of liability, which need not contain as an element the use or threatened use of force. ECF No. 1285 at 17; *see also Garcia-Ortiz*, 904 F.3d at 109 (noting that an aider and abettor is punishable as a principal "and thus no different for purposes of the categorical approach than one who commits the substantive offense" (citing *Lassend*, 898 F.3d at 132-33)). The underlying crime, murder, most certainly does. ECF No. 1285 at 13; *see also Ivory*, 2020 WL 3832929, at *3 ("[T]o decide whether Count 10 satisfies the elements clause of Section 924(c), the Court looks to the underlying statute of conviction—attempted killing of a witness, 28 U.S.C. § 1512(a)(1)(A)—rather than the aiding and abetting statute, 18 U.S.C. § 2."); *accord United States v. Woods*, 14 F.4th 544, 552 (6th Cir. 2021) ("The Woods brothers' argument conflates the predicate crimes of violence underlying their § 924(c) conviction (which are not conspiracy charges) and the basis of liability for the 924(c) charges, which may have been *Pinkerton* liability.").

Section 11-1-3 of the Rhode Island General Laws provides that:

> Every person who shall aid, assist, abet, counsel, hire, command, or procure another to commit any crime or offense, shall be proceeded against as a principal or as an accessory before the fact, according to the nature of the offense committed, and upon conviction shall suffer the like punishment as the principal offender is subject to by this title.

R.I. Gen. Laws § 11-1-3; *see also State v. Davis*, 877 A.2d 642, 648 (R.I. 2005) ("The law is well settled that one who aids and abets in the commission of the crime and is also present at the scene may be charged and convicted as a principal.") (internal quotation marks omitted). Section 11-1-3 "eliminates the legal distinction between the commission of a crime as a principal and aiding and abetting another in the commission of a crime, and for this reason, defendant's manner of participation, whether as a principal or an aider or abettor, is not an element of the crime." *State v. Davis*, 877 A.2d at 648; *see also State v. Parillo*, 228 A.3d 613, 629-30 (R.I. 2020) ("This Court has held that aiding and abetting is but a theory of liability, and not a separate offense.") (citing *State v. Davis*, 877 A.2d at 648); *State v. Davis*, 228 A.3d at 648 ("Because defendant's manner of participation is not an element of the crimes charged in the indictment, the state need not persuade a unanimous jury beyond a reasonable doubt that defendant was a principal or an aider and abettor."); *accord Gandia-Maysonet v. United States*, No. 16-cv-2151, 2020 WL 5646457, at *4 (D.P.R. Sept. 22, 2020) ("The First Circuit found that 18 U.S.C. § 2 'makes an aider and abettor "punishable as the principal," and thus no different for purposes of the categorical approach than one who commits the substantive offense.'" (quoting *Garcia-Ortiz*, 904 F.3d at 108)).

The Redacted Superseding Indictment in Count I, Racketeering Act Two (b) charged that Mr. Roman and several co-defendants murdered Jose Mendez, in violation of §§ 11-23-1 *and* 11-1-3 of the Rhode Island General Laws.[15] ECF No. 1274-1 ¶ 29. Count IV, VICAR murder of Jose Mendez, also charged Mr. Roman and others with violating §§ 11-23-1 and 11-1-3. *Id.* ¶ 41.

The Court at first instructed the jury on aiding and abetting in Count I, Racketeering Act One. ECF No. 1274-6 at 6-7. The Court referred back to those instructions in its instructions to the jury with respect to Racketeering Act Two:

> Second, my previous instructions as to the law of aiding and abetting, and as to the law of coconspirator liability, are applicable. In this vein, I would remind you that a person who counsels, hires, commands, or procures another to commit a murder is just as responsible for that murder as the actual killer. Further, one who conspires with another person is guilty of any crimes carried out in furtherance of that conspiracy, as long as those crimes are a reasonably foreseeable result of the conspiracy.
>
> Thus, if you conclude that any of the defendants charged either aided or abetted another defendant, or conspired to kill Jose Mendez, you may find him guilty of the murder of Jose Mendez even though he did not physically participate in the murder, or was not present at the murder scene.

ECF No. 1274-5 at 4-5.

---

[15] In contrast, Racketeering Act Two (a), conspiracy to murder Jose Mendez, alleged violation of §§ 11-1-6 and 11-23-1. Section 11-1-6 provides that:

> Except as otherwise provided by law, every person who shall conspire with another to commit an offense punishable under the laws of this state shall be subject to the same fine and imprisonment as pertain to the offense which the person shall have conspired to commit, provided that imprisonment for the conspiracy shall not exceed ten (10) years.

As for coconspirator liability, "Rhode Island adheres to the *Pinkerton* theory of vicarious liability, which holds a co-conspirator criminally liable for the actions of another co-conspirator if those actions were committed in furtherance of an existing conspiracy." *State v. Ros*, 973 A.2d 1148, 1164 (R.I. 2009) (citing *Pinkerton*, 328 U.S. at 635, 647). The First Circuit, too, has upheld the use of coconspirator liability on a § 924(c) charge. *See United States v. Hernandez-Roman*, 981 F.3d 138, 144 (2020) ("As we have said, a *Pinkerton* instruction exposes a coconspirator to criminal liability for the substantive crimes committed in the course of the conspiracy, regardless of whether he or some other coconspirator actually perpetrated the crimes.") (internal quotation marks omitted); *id.* at 145 ("We have held that where, as here, *Pinkerton* liability is in play, the defendant does not need to have carried the gun himself to be liable under section 924(c).") (internal quotation marks omitted); *United States v. Vazquez-Castro*, 640 F3d 19, 25 (1st Cir. 2011) ("[T]he district court here did not plainly err by instructing the jury on the *Pinkerton* theory of liability as an alternative to the aiding and abetting theory. Even though only the aiding and abetting theory was specifically referenced in the indictment, each theory was implicit in the firearm charge against him."); *see also Woods*, 14 F.4th at 553 (noting that other circuits had concluded that "a defendant can be convicted of a § 924(c) charge based on a theory of *Pinkerton* liability" and citing cases).

The Court instructed the jury that Mr. Roman may be held liable for the murder of Jose Mendez based on a theory of coconspirator liability. *See* ECF No. 1274-2 at 3. As noted above, the Court stated in that instruction:

> A coconspirator may be guilty of an offense even though he did not directly participate in the acts constituting that offense. A coconspirator is responsible not only for his own acts, but also for the substantive acts of his coconspirators that are done in furtherance of the conspiracy, and are a reasonably foreseeable result of that conspiracy. Indeed, a coconspirator who commits an offense pursuant to a conspiracy is held to be the agent of the other coconspirators.

ECF No. 1274-6 at 7. Although given with respect to Count I, Racketeering Act One, the Court incorporated this instruction into its instructions for Racketeering Act Two as well. ECF No. 1274-5 at 4-5.

The Rhode Island Supreme Court has stated that a jury need not decide unanimously among different theories of liability in convicting a defendant. *State v. Delsestre*, 35 A.3d 886, 899 (R.I. 2012) ("[T]he prosecution is not required to persuade a unanimous jury beyond a reasonable doubt with respect to the *manner* in which a defendant participated in a crime."); *see also State v. Davis*, 877 A.2d at 648 ("[A]s long as a jury, having been properly instructed about the alternative theories of participation, is unanimously convinced beyond a reasonable doubt that . . . defendant has participated in the crime as either an aider/abettor or as a direct principal, the jury is not required *also* unanimously to determine the *manner* of defendant's participation."); *Parillo*, 228 A.3d at 630 (same). Thus, under Rhode Island law, the jury did not have to decide whether Mr. Roman was guilty of the murder of Jose Mendez as a principal, aider and abettor, or coconspirator, if it unanimously found that Mr. Roman was guilty of the unlawful killing of Mr. Mendez with malice aforethought, i.e., the elements of second-degree murder. *Delsestre*, 35 A.3d at 900 ("In the instant case, the burden was at all times on the prosecution to prove the

38

presence of the elements set forth in the statute defining murder—*viz.*, (1) that there was an unlawful killing of a human being and (2) that it was done with malice aforethought.  It follows that unanimity was required only as to those bottom line elements, not as to whether a defendant was acting as a principal, as an aider and abettor, or as a coconspirator.") (citing *Schad*, 501 U.S. at 631-32 (internal citation and quotation marks omitted); *see also id.* at 901 ("In light of the defined elements of murder, it is our opinion that the jury was not required to unanimously agree as to whether defendant was guilty of second-degree murder as a principal, or as an aider or abettor, or as a coconspirator.").

The Court instructed the jury that it could find Mr. Ramon guilty as a principal or under theories of aiding and abetting or coconspirator liability.  Under Rhode Island law, the jury did not have to make a unanimous finding as to the manner of Mr. Roman's participation in the murder of Jose Mendez—as a principal, aider and abettor, or coconspirator—if it unanimously found Mr. Roman guilty of the murder of Mr. Mendez.  It did.  Thus, the Court rejects Mr. Roman's argument that murder under Rhode Island law is not a crime of violence for purposes of § 924(c) because it may be committed under theories of aiding and abetting or coconspirator liability.

Mr. Ramon has not met his burden of demonstrating that it is more likely than not that the jury based its Count XII guilty verdict solely on the conspiracy to murder Jose Mendez, as charged in Count I, Racketeering Act Two. *See Dimott*, 881 F.3d at 243.  That the jury may have convicted Mr. Ramon of murder as a principal, as an aider and abettor of murder, or as a coconspirator does not change the outcome. See

39

*Delsestre*, 35 A.3d at 901.  Therefore, the Court must deny Mr. Roman's Motion to Vacate.


CONCLUSION

Mr. Roman has not met his burden of demonstrating that he is entitled to relief.  The Court therefore DENIES Shariff Roman's Motion to Vacate his conviction and sentence for Count XII under 28 U.S.C. § 2255 (ECF No. 1232).

RULING ON CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court finds that this case is appropriate for issuing a certificate of appealability, because Mr. Roman has made a substantial showing of the denial of a constitutional right on any claim, as required by 28 U.S.C. § 2253(c)(2).

Mr. Roman is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal here.  *See* § 2255 Rule 11(a).


IT IS SO ORDERED.

John J. McConnell, Jr.
Chief United States District Judge

Date: February 23, 2022

40